IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDI GURCAK,<br><br>               *Plaintiff,*<br><br>v.<br><br>CENTER FOR VICTIMS,<br><br>               *Defendant* | Civil Action No. 2:23-cv-1462<br><br>Hon. William S. Stickman IV |

### **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

    Plaintiff Brandi Gurcak ("Gurcak") brought suit against her former employer, Center for Victims ("CV"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") alleging that it discriminated against her on the basis of protected characteristics (gender and sexual orientation) and that it retaliated against her for opposing sex discrimination. (ECF No. 30). Presently before the Court is CV's Motion to Dismiss and Motion to Strike. (ECF No. 31). For the reasons set forth below, the motion to dismiss will be granted in part and denied in part and the motion to strike will be denied.

### I.     FACTUAL BACKGROUND

    CV is a non-profit corporation that provides services to victims of crimes. On December 6, 2016, CV hired Gurcak – a licensed professional counselor with a Master of Science in Mental Health Counseling. When she joined CV, Gurcak had ten years of relevant experience. From December 2016 to July 2018, Gurcak worked as a trauma therapist. In addition to working as a trauma therapist, from August 2018 to October 2019, Gurcak served as the clinical coordinator

1

for CV. Gurcak is a lesbian, which CV's supervisory and management staff knew. (ECF No. 30, pp. 1-3).

On April 20, 2018, Gurcak learned that CV's Director of Human Resources Diane Vrabel ("Vrabel") called Gurcak a "dyke bitch" in the presence of a subordinate. News of this spread throughout CV, and several coworkers approached Gurcak about her response. Gurcak complained to her direct supervisor, Clinical Director Cindy Snyder ("Snyder"). She also requested to speak to someone in administration. Snyder stated she would talk to her supervisor, Vice President Tracey Provident ("Provident"), to schedule a meeting. Gurcak repeatedly asked about CV's policy on investigating harassment, and how the matter with Vrabel was going to be handled. Months later, when Gurcak finally spoke with Provident, Gurcak reiterated that she felt she had been discriminated against by Vrabel and CV should have addressed the matter. (*Id.* at 3).

In August 2018, Snyder asked Gurcak to take on the role of clinical coordinator in addition to her work as a trauma therapist. It was made clear to Gurcak that this was not a promotion, and the role involved administrative work that no one else wanted to do (e.g., staffing a reception desk, phone screening of clients, and assigning and referring calls). When Gurcak told Snyder that she wanted to advance to a supervisory role, Snyder said none were available. Gurcak agreed to serve in the clinical coordinator role because Snyder told her it was a "stepping stone" for promotion to a supervisory position. (*Id.* at 4).

Shortly thereafter, a clinical supervisor position opened that required a minimum of ten years of clinical experience, including clinical supervision of staff and cases, but the position was not posted, advertised or disclosed internally or externally. Thus, Gurcak was never informed about the position or how to apply. In July 2019, the Center awarded the clinical supervisor

position to a junior coworker of Gurcak's with less than ten years of experience. When Gurcak attended a meeting with the new clinical supervisor and Snyder in August 2019, she was told by Snyder that CV rejected her for a promotion because she was "too vocal" in complaining about Vrabel calling her a "dyke bitch." Snyder also told Gurcak that CV would never promote her to a supervisory position. (*Id.* at 4-5).

Gurcak resigned from CV effective October 30, 2019. On her last day, Chief Executive Officer Laurie MacDonald "stormed" into the therapists' offices "demanding" to know who put signs on restroom doors stating they could be used in accordance with people's gender identity. She had the signs in her hand. Later that day, Gurcak heard MacDonald screaming at the therapist who had hung the signs for a transgender client's visit to CV. The next day, the therapist was fired. A few months later, Channel 11 local news aired an investigatory story about CV and its "toxic culture and discriminatory treatment of employees." (*Id.* at 5-6).

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to

3

accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

**B. Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Snider for Goldhirsh v. State Farm Fire & Cas. Co.*, 644 F. Supp. 3d 141, 147 (E.D. Pa. 2022) (quotation omitted). The burden rests with the moving party to show that the challenged matter should be stricken. *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019). Thus, the movant must demonstrate that the matter falls within one of the categories listed in Rule 12(f). "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) (citing *Del. Health*

4

*Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995)). "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). And "scandalous" matter is that which "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

The Court of Appeals for the Third Circuit has "repeatedly stated our preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984). "Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (citation and quotation marks omitted). Thus, "[m]otions to strike are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Lee v. Eddystone Fire & Ambulance*, No. 19-cv-3295, 2019 WL 6038535, at *3 (E.D. Pa. Nov. 13, 2019) (citation omitted).

### III. ANALYSIS

**A. Counts I and III will proceed.**

At Count I, Gurcak brings a difference in treatment claim – a denial of promotion to clinical supervisor – based on her sexual orientation/gender in violation of Title VII. (ECF No. 30, p. 7). Title VII sex discrimination claims are controlled by the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). To prevail in a sex discrimination claim under Title VII, a plaintiff must first establish by a preponderance of the evidence a *prima facie* case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing *McDonnell Douglas*). A plaintiff must show

5

that: 1) she is a member of a protected class, 2) she was qualified for the position she sought to attain or retain, 3) she suffered an adverse employment action, and 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas*, 411 U.S. at 802). Once a plaintiff makes out a *prima facie* case of sex discrimination, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the employer does so, the inference of discrimination drops, and the burden shifts back to the plaintiff to show that the employer's proffered reason is merely pretext for intentional discrimination. *See id.* at 507–08.

To survive a motion to dismiss on a Title VII difference in treatment claim, a plaintiff "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [the plaintiff] was a member of a protected class and that she suffered an adverse employment action." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016)). "[D]etailed pleading is not generally required" but the plausibility standard requires that a pleading show "'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678). A plaintiff can make out a *prima facie* case of sex discrimination by pointing to a similarly situated individual who is outside the plaintiff's protected class who engaged in the same conduct as the plaintiff but whom the defendant treated more favorably. *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998).

Gurcak has satisfied the first prong of her *prima facie* case because she is female and a lesbian, therefore, she is a member of a protected class.[1] She has also satisfied the second prong

---

[1] "Title VII prohibits employers from discriminating against individuals on the basis of gender." *Kahan v. Slippery Rock Univ. of Pa.*, 664 F. App'x 170, 173 (3d Cir. 2016). And Gurcak's status as a homosexual is a protected trait within the meaning of Title VII. *See Bostock v. Clayton Cty.*,

of her *prima facie* case because Gurcak alleges that she was qualified for employment as a clinical supervisor and actually served in a supervisory role as clinical coordinator from August 2018 to October 2019. Next, Gurcak has satisfied the third prong of her *prima facie* case in that she was subjected to an adverse employment action – she was passed over for the clinical supervisor position in July 2019, and the position was given to a junior coworker of Gurcak's with less than ten years of experience. Lastly, Gurcak has satisfied the fourth prong of her *prima facie* case. This prong requires the adverse employment action to have occurred under circumstances that could give rise to an inference of intentional discrimination. Gurcak has pled that: (1) CV did not post, advertise or otherwise disclose the open clinical supervisor position either internally or externally, (2) the clinical supervisor position was filled with a coworker with considerably less experience, (3) she was told by Snyder that CV rejected her for the promotion because she was "too vocal" in complaining about Vrabel calling her a "dyke bitch", and (4) she was told by Snyder that CV's administrative team would "never" promote her to a supervisory role. Thus, Gurcak has plausibly stated a difference in treatment claim.

At Count III, Gurcak brings a retaliation claim. Establishing a *prima facie* case of retaliation under Title VII requires a plaintiff to "show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citation omitted). A plaintiff can demonstrate a causal connection by showing (1) "a pattern of antagonism," (2) "temporal

---

—— U.S. ——, 140 S. Ct. 1731, 1737 (2020) ("An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids."); *Id.* at 1747 ("[H]omosexuality ... [is a] distinct concept[ ] from sex," but discrimination on the basis of sexual orientation is prohibited under Title VII as a form of sex discrimination.).

7

proximity 'unusually suggestive of retaliatory motive,'" or (3) "the proffered evidence, looked at as a whole." *Id.* at 260.

As a result of reporting Vrabel for calling her a "dyke bitch" in April 2018 and continually asking in the ensuing months for an investigation into the matter, Gurcak pleads that she was told by her supervisor that she was denied a promotion to clinical supervisor in August 2019 and that CV would "never" promote her to a supervisory role. Gurcak has alleged every *prima facie* element for retaliation. Her retaliation claim will proceed.[2]

The Court takes a moment to clarify that constructive discharge could also be the adverse employment action at issue.[3] To establish a constructive discharge, Gurcak must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (citation omitted). Thus, an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992). In determining whether an employee was forced to resign, the Court considers a number of factors, including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or

---

[2] CV asserts that Gurcak's claims are meritless because a bisexual female received the clinical supervisor role in August 2019, CV never actually applied for the position in 2019, and Snyder was merely speculating about Gurcak's prospects for advancement and reasons for non-promotion. While these assertions may play a role in analyzing CV's non-retaliatory motive/non-discriminatory reason, they are irrelevant to whether Gurcak has adequately pled her *prima facie* case at the motion to dismiss stage.

[3] "A plaintiff can prove constructive discharge independent of a hostile work environment based on the actions of a supervisor." *Boandl v. Geithner*, 752 F. Supp. 2d 540, 573 (E.D. Pa. 2010) (citation omitted).

given unsatisfactory job evaluations. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010).

Typically, "the question of whether the alleged conditions were so intolerable a reasonable person in [plaintiff's] position would have felt compelled to resign" is "a fact intensive inquiry that is not amenable to resolution at the motion to dismiss stage." *Johnson v. York Acad. Reg'l Charter Sch.*, No. 1:23-cv-17, 2023 WL 6448843, at *6 (M.D. Pa. Oct. 3, 2023) (cleaned up). That is especially the case when a plaintiff has pled facts that satisfy several of the above factors, as Gurcak has done here. She claims that CV refused to investigate her complaint about Vrabel and then "foist[ed] additional responsibilities" on her "under false pretenses" "without receiving any promotion." (*Id.* at 20-21). Recognizing the fact-specific nature of this claim at the pleading stage, the Court finds that Gurcak has asserted sufficient well-pleaded facts for her constructive discharge claim to proceed.

For these reasons, the Court will deny CV's motion to dismiss Counts I and III.

**B. Count II will be dismissed.**

Title VII makes it unlawful for employers to knowingly subject employees to harassment "sufficiently severe or pervasive to alter the conditions of [a plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). To establish a hostile work environment claim, Gurcak must establish four elements: (1) "intentional discrimination" because of her sexual orientation/gender, (2) that "was severe or pervasive," (3) that "detrimentally affected" her, and (4) "would detrimentally affect a reasonable person in like circumstances." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). In the context of a hostile work environment case, there is a distinction to be made between "severe" and "pervasive" harassment. "[S]ome harassment may

be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (citation omitted). Hostile work environment claims alleging pervasive harassment are designed to remedy "the cumulative effect of a thousand cuts," and acts "which are not individually actionable" but "may be aggregated to make out a ... claim." *O'Connor v. City of Newark*, 440 F.3d 125, 127-28 (3d Cir. 2006). Whether a series of alleged incidents constitutes pervasive harassment requires an examination of the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance" are all relevant to whether the discrimination the employee suffered was sufficiently "severe" or "pervasive." *Castleberry*, 863 F.3d at 264 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). As the Supreme Court has noted, "[a] hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

Gurcak had to plead facts that show her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment[.]" *Betz v. Temple Health Sys.*, 659 F. App'x 137, 142 (3d Cir. 2016) (cleaned up). This is a difficult standard to meet. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (cleaned up).

Gurcak's allegations fall short of meeting the high threshold for stating a plausible hostile work environment claim. All she has pled is an isolated comment on April 20, 2018. While the "dyke bitch" comment is offensive, "[i]solated incidents and offhanded comments ... are not sufficient to sustain a hostile work environment claim." *Stucke v. City of Phila.*, 685 F. App'x 150, 153 (3d Cir. 2017) (internal quotation marks and citation omitted). Standing alone, the comment is not sufficiently severe or pervasive to support a hostile work environment claim.

According to Gurcak, CV's hostile actions were its refusal to investigate Gurcak's complaint about Vrabel and "foisting additional responsibilities" on her "under false pretenses" "without receiving any promotion." (ECF No. 38, pp. 20-21). But these are not allegations of an abusive working environment especially when Gurcak has pled that she "agreed to the extra work because Snyder called it a 'stepping stone' for promotion to a supervisory position." (ECF No. 30, p. 4). Aside from the April 20, 2018 "dyke bitch" comment, no other facts are pled as to any other instances of intimidation, ridicule, insults, or comments made by anyone at CV against Gurcak. Gurcak has failed to show that the harassment she allegedly experienced was severe and pervasive because she has provided no details. There is nothing pled as to the frequency of the harassment, whether it was severe or physically threatening or humiliating, or whether it unreasonably interfered with her job performance. Gurcak has not satisfied the first two elements of a hostile work environment claim.

Nevertheless, based on local news coverage aired in January 2020, Gurcak claims that through the discovery process she will be able to "uncover other evidence of lesbian/gay animus by Center management." (ECF No. 38, p. 14). And, as to the incident on her last day involving another employee posting a sign on a bathroom door, Gurcak is of the opinion that it "suggest[s] that discriminatory animus permeated the Center's culture and decision-making. (*Id.* at p. 17

n.8). The law is clear that Gurcak is not entitled to discovery so that she may search for evidence to support facts she has not yet pled. Gurcak has failed to offer an adequate basis in fact for a viable hostile work environment claim. The Court will not permit her to engage in a fishing expedition in search of evidence so that she can adequately plead a hostile work environment claim. Count II will be dismissed with prejudice. Gurcak has already amended her complaint once, and the Court holds that further amendment of this claim would be futile.

### C. The motion to strike will be denied.

The factual record is not developed, and the Court must consider the liberal pleading standards of Federal Rule of Civil Procedure 8. It does not find the allegations set forth in paragraphs 34 to 38 of the first amended complaint to be immaterial, impertinent, or scandalous. With the dismissal of Gurcak's hostile work environment claim, these allegations may indeed prove to have little relevance to the claims that are advancing, but the Court cannot say at this early stage that the allegations have no possible relation or logical connection to the subject matter of the controversy. The allegations do not cause prejudice to CV as the parties move through the discovery process. It is in the best interests of the parties and the most effective use of judicial resources to advance this lawsuit without striking paragraphs 34 to 38 of the first amended complaint. CV's motion to strike will be denied. This denial is without prejudice to CV raising the issue at a later stage of the litigation.

## IV. CONCLUSION

For the reasons set forth below, the motion to dismiss will be granted in part and denied in part and the motion to strike will be denied. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

3/11/24
Date